UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DALE S.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

6:20-CV-07011 EAW

## INTRODUCTION

Represented by counsel, plaintiff Dale S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 10; Dkt. 11) and Plaintiff's reply (Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 11) is denied.

**BACKGROUND**

Plaintiff protectively filed his applications for DIB and SSI on February 28, 2018. (Dkt. 9 at 13, 63, 76).[1] In his applications, Plaintiff alleged disability beginning February 4, 2018. (*Id.* at 13, 167). Plaintiff's applications were initially denied on May 24, 2018. (*Id.* at 13, 112). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Gregory Moldafsky on November 26, 2019. (*Id.* at 39-62). On January 31, 2020, the ALJ issued an unfavorable decision. (*Id.* at 10-25). Plaintiff requested Appeals Council review; his request was denied on September 30, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31,

2020. (Dkt. 9 at 16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 4, 2018, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "obesity, schizoaffective disorder, bipolar disorder, and posttraumatic stress disorder." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). In particular, the ALJ considered the requirements of Listings 12.03, 12.04, and 12.06, and the effects of Plaintiff's obesity in reaching his conclusion. (*Id*. at 16-17).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following additional limitations:

> [Plaintiff] is limited to simple (as defined in the [Dictionary of Occupational Titles] as SVP ratings 1 and 2), routine, and repetitive tasks in a work environment that is not fast paced or has strict production quotas (e.g. work that is goal based or measured by end result). Additionally, he is limited to no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors.

(*Id.* at 17). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 18).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of dishwasher, floor cleaner, and linen

room attendant. (*Id.* at 21-22). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 2).

## II.   Remand for Further Proceedings is Necessary

Plaintiff asks the Court to reverse the Commissioner's decision or, in the alternative, remand for further proceedings, arguing that: (1) the ALJ failed to properly develop the record; and (2) the ALJ's RFC finding is not supported by substantial evidence. For the reasons that follow, the Court agrees with Plaintiff that the ALJ in this case failed to appropriately develop the record and that this error requires remand.

### A.   Duty to Develop the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17 CIV 5392 (GBD)(KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

This duty is heightened when a claimant proceeds *pro se*, as Plaintiff did before the ALJ in this case. *See Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Some district courts in this Circuit have also held that the duty is heightened "where mental conditions are present." *Martin v. Colvin*, No. 1:15-CV-01067 (MAT), 2017 WL 370809, at *3 (W.D.N.Y. Jan. 26, 2017). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

Here, Plaintiff has identified two purported gaps in the administrative record. First, he argues that his therapist Brenda Black authored a letter in February of 2018 indicating that he was to "remain out of work at this time due to mental health concerns" (Dkt. 9 at 303) but that the record does not contain a copy of this letter, creating an evidentiary gap. Second, Plaintiff argues that the ALJ failed to appropriately develop the record regarding his physical impairments. The Court agrees with the latter of these contentions.

The evidence of record clearly establishes that Plaintiff suffers from gastroesophageal reflux disorder ("GERD") and that this physical impairment caused Plaintiff significant problems during the relevant time period. In August of 2016, Plaintiff reported to his physician that he was experiencing acid reflux daily and had been taking over the counter medication for the past three years. (Dkt. 9 at 318). He further reported pain after eating that lasted about four hours, as well as nausea and an episode of vomiting. (*Id.*). Plaintiff's physician assessed him with GERD and instructed him to start taking

omeprazole. (*Id*. at 318-19, 321). Plaintiff's omeprazole dose was increased in March of 2018. (*Id*. at 322-23). Then, in April of 2018—within the relevant time frame for his claims—Plaintiff reported that omeprazole no longer appeared to be controlling his GERD and that he had experienced a "sour stomach" five to six times over the previous month, as well as nausea with no vomiting, pain, bloating, and diarrhea. (*Id*. at 325). Plaintiff was switched from omeprazole to pantoprazole, and it was noted that he might need a gastroenterology referral for a colonoscopy. (*Id*. at 326). Plaintiff continued to suffer from gastrointestinal issues after the switch to pantoprazole, reporting a mixture of constipation and diarrhea. (*Id*. at 329). He was referred to gastroenterology for "worsening GERD" and possible gastritis. (*Id*. at 330).

At a gastroenterology appointment on May 25, 2018, it was again noted that Plaintiff was alternating between constipation and diarrhea as well as experiencing nausea. A strong family history of Crohn's Disease was noted. (*Id*. at 341). Plaintiff was advised to proceed with both an endoscopy and a colonoscopy. (*Id*. at 342-43). He underwent those procedures on May 2, 2018. (*Id*. at 344). The imaging studies revealed mild esophaghitis with a non-obstructing Schatzki ring (that is, a ring of tissue that develops within the esophagus), a small hiatal hernia, mild antral gastritis that was biopsied for H. pylori, and grade 2 internal and external hemorrhoids. (*Id*.). The record does not contain any indication of the result of the H. pylori biopsy.

Despite this clear documentation of Plaintiff's ongoing issues with GERD during the relevant time period, the ALJ asked Plaintiff no questions about this impairment or its current status whatsoever during the hearing. Perhaps even more troubling, at step two of

the analysis, the ALJ did not even recognize GERD as a medically determinable impairment, much less consider whether it was severe or non-severe. This is notwithstanding the fact that, in addition to the evidence from Plaintiff's treating physicians discussed above, consultative psychiatric examiner Dr. Jeanne Shapiro included GERD among her diagnoses for Plaintiff. (*Id*. at 351).

Defendant contends that the ALJ discharged his duty to develop the record because Plaintiff testified at the hearing that he was concerned with his mental impairments and that he would be able to work if he could control his anxiety. (Dkt. 11-1 at 21-22). This argument is unpersuasive. Contrary to Defendant's assertions, Plaintiff did not state that he was concerned solely with his mental health, he stated that he was "<u>more</u> here for the psychological part," at which point the ALJ interrupted him and said, "if that's what's really bugging you today, then let's just make sure we have those [records]." (Dkt. 9 at 46 (emphasis added)). After asking Plaintiff some preliminary questions about his mental health care providers, the ALJ then asked Plaintiff, "if your mental health stuff was all perfect, you could . . . go back to work?" (*Id*. at 48). Plaintiff replied, "if I could get along with people and if my anxiety wouldn't stop me from being able to communicate and actually carry out a job, do you know that I mean, then I would be able to work. But I . . .," at which point the ALJ again cut him off. (*Id*.). The Court disagrees that this was sufficient to satisfy the ALJ's duty to develop the record in a non-adversarial fashion.

First, even accepting Plaintiff's lay opinion that his physical impairments would not be independently disabling separate from his mental impairments, that does not mean that they need not be considered at all. The Commissioner's regulations are clear that an RFC

determination "must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record. . . . We will consider all of your medically determinable impairments of which we are aware . . . when we assess your residual functional capacity."); *id*. § 416.954(a) (same). In other words, the fact that Plaintiff did not claim to be disabled by his physical impairments did not mean that they could simply be disregarded by the ALJ in reaching his RFC finding.

Second, as noted, Plaintiff did not state that his sole concern was his mental impairments, he stated only that he was <u>more</u> concerned with his psychological limitations. Plaintiff is a layperson who was proceeding *pro se* at the time and who also suffers from significant mental health issues. It is understandable that he did not appreciate the importance of presenting evidence of all his health concerns, rather than just the mental health concerns that he viewed as the most serious. The ALJ, having been put on notice via the medical evidence of record that Plaintiff had at least one medically determinable physical impairment for which he was seeking ongoing treatment, was under a duty to explain the situation to Plaintiff and obtain relevant information. He did not do so, and this error requires remand. *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004).

**B.     Remaining Argument**

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for

further administrative proceedings is necessary, the Court declines to reach this argument. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 22, 2022
      Rochester, New York